IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| REYNALDO MUNIZ, JR., § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 1:13-cv-666-LY |
| § | |
| TEXAS DEPARTMENT OF PUBLIC § | |
| SAFETY et al., § | |
| Defendant. § | |

### DEFENDANT DAVIS, SALINAS, AND PAHL'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND FOR FAILURE TO STATE A CLAIM

### TO THE HONORABLE UNITED STATES DISTRICT JUDGE, LEE YEAKEL:

Defendants Chancy Davis, Alonso Salinas, and Cody Pahl[1], by and through the Attorney General for the State of Texas, submit this Motion to Dismiss for Lack of Subject Matter Jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and for failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(6). In support thereof, Defendants Davis, Salinas, and Pahl respectfully offer the following:

### I.

### STATEMENT OF THE CASE

Plaintiff Reynaldo Muniz, Jr. filed this action against Defendants Davis, Salinas, and Pahl stemming from a detention and arrest on May 26, 2012. Troopers Davis, Salinas, and Pahl are law enforcement officers employed by the Texas Department of Public Safety. (DPS) In his complaint, Plaintiff alleges that on or about May 26, 2012, all of the Defendants violated his civil rights when he was detained and later arrested for failure to identify and resisting arrest. As set

---

[1] Plaintiff has also named a fourth DPS Trooper, Richard Sorto, as a defendant. It does not appear that defendant Sorto, who is no longer employed by DPS, has been served. However, the argument and authorities asserted herein are equally applicable to the claims against him.

out below[2], Plaintiff has asserted claims under 42 U.S.C. § 1983 as well as state tort claims. He alleges excessive force, false imprisonment, false arrest, conspiracy, gross negligence, intentional infliction of emotional distress, and assault.

Plaintiff claims that on the morning of May 26, 2012, a Saturday, he was sitting in a truck parked backwards outside of closed auto shop on Springdale Road. (D.E. 1 at 5)  The tailgate was facing the front of the business. (D.E. 1-4 at 1)  Troopers Davis and Salinas conducted a traffic stop of another vehicle directly adjacent to the area where Plaintiff was parked. (Id. at 5, D.E. 1-3 at 1)  Trooper Davis observed that the Plaintiff and the driver of the truck were sitting slouched in their seats in such a way that made it difficult to see them. (*Id.*)  Plaintiff claims Troopers Davis and Salinas questioned and detained him with no probable cause, but makes no allegation as to whether the officers had reasonable suspicion. (*See generally*, D.E. 1)

Plaintiff admits he attempted to exit the vehicle and walk away from the area and at this point Trooper Davis "tried to put the Plaintiff's hands behind his back." (D.E. 1 at 6)  Nowhere in the complaint does Plaintiff state that Trooper Davis was successful in securing him at this time or that he complied with Trooper Davis' orders. (*Id.*)  Instead, Plaintiff claims he "reasserted his Constitutional right asking for their probably cause." (*Id.*)  Moreover, nowhere does Plaintiff claim that Trooper Salinas' report (which he has incorporated by reference in his compliant) contains false information. (*See generally*, D.E. 1)  Trooper Salinas states that when Trooper Davis attempted to secure Plaintiff's arms, he pulled his hands away and swung his body around. (D.E. 1-3 at 1)  Plaintiff's and Defendants' accounts of these events are not inconsistent with each other.

---

[2] As required under Rule 12, all of the facts recited below are derived exclusively from within the four corners of Plaintiff's complaint and attached materials which Plaintiff explicitly incorporated by reference within his complaint.

During the process of detaining Plaintiff, he claims that Trooper Davis, using unconstitutionally excessive force, poked Plaintiff in the chest with his finger. (D.E. 1 at 6, 8) After not being able to secure Plaintiff, he claims Trooper Davis drew his taser, but Plaintiff does not claim that the taser was actually used on him. (*Id.*)  Plaintiff alleges no physical injuries from these acts. (*See generally*, D.E. 1)  Plaintiff claims following the arrival of the APD and TCSO officers, he was arrested by Defendants and transported to the Travis County Jail.

Plaintiff admits that following his arrest, an affidavit and application for an arrest warrant was presented before a neutral magistrate. (D.E. 1 at 7, 1-2, 1-3, 1-4)  The magistrate found probable cause to arrest Plaintiff and set bail at $8,000 on Plaintiff's resisting arrest charge. (*Id.*) Plaintiff does not appear to claim or allege that the information contained in the arrest affidavits completed by Defendant Trooper Salinas is false.

## II.

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 FOR FAILURE TO STATE A CLAIM

**A.     Pleading Standards under Rule 12(B)(6)**

Plaintiff's pleadings are insufficient to establish his entitlement to relief under 42 U.S.C. § 1983.  Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U. S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (May 18, 2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss. See also *Fowler v. UMPC Shadyside*, 578 F.3d 203 (3rd Cir.2009).

The Supreme Court began its rejection of bare bones pleading in *Twombly,* holding that a pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *Phillips*, 515 F.3d at 232. The Supreme Court's opinion in *Iqbal* extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. Courts should identify and disregard conclusory allegations for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664.

Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." 129 S. Ct. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1950. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*; *See also Fowler v. UMPC Shadyside*, 578 F.3d 203 (3rd Cir. 2009).

After *Iqbal*, it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949. To prevent dismissal, all civil

complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. See *Id.* at 1949-50; see also *Twombly*, 550 U.S. at 555, & n.3. For the reasons noted below, Plaintiff's claims are insufficient to establish Constitutional violations under *Twombly* and *Iqbal*.

**B.     Plaintiff failed to state a claim for excessive force under the Fourth Amendment.**

Plaintiff's claim for excessive force fails as a matter of law as he has alleged nothing more than being poked in the chest with no resulting injury. A claim of excessive force by a peace officer must be analyzed solely under the Fourth Amendment to the U.S. Constitution. *Graham v. Connor,* 490 U.S. 386, 393-394, 109 S. Ct. 1865, 1870-1871 (1989). In order to demonstrate the use of excessive force under the Fourth Amendment, the plaintiff must prove some injury, which resulted directly and only from the use of force that was clearly excessive to the need, and the force used was objectively unreasonable. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir.1999). A plaintiff is not required to demonstrate a significant injury. *Harper v. Harris County*, 21 F.3d 597, 600 (5th Cir.1994). However, the plaintiff is required to have suffered at least a *de minimis* injury." *Williams* at 703; *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir.2007) "The determination of whether a plaintiff's alleged injury is sufficient to support an excessive force claim is context-dependent and is 'directly related to the amount of force that is constitutionally permissible under the circumstances.' " *Id.* (quoting *Ikerd v. Blair*, 101 F.3d 430, 435 (5th Cir.1996)). Factors to consider, in assessing whether the force is "excessive" or "unreasonable," "include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest

or attempting to evade arrest by flight.' " *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir.2009) (internal citations omitted). Even still, trivial and *de minimis* acts plainly do not rise to the level of Constitutional violations. *Joiner v. Smith*, 69 F.3d 536, 539 (5th Cir.1995) (noting that "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights" (internal quotation omitted))

Here, Plaintiff's excessive force claim is predicated on being allegedly poked in the chest. No injuries are alleged. This is the precise type of trivial acts which are not cognizable as Constitutional violations. Accordingly, this claim must be dismissed.

**C.     Plaintiff's false arrest / false imprisonment claims fail as a neutral magistrate found the existence of probable cause.**

The finding of probable cause to arrest Plaintiff by a neutral magistrate terminates all liability for Defendants for any false arrest, false imprisonment, or conspiracy claims. "The Fifth Circuit has held that "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." *Taylor v. Gregg*, 36 F.3d 453, 456-57 (5th Cir.1994); *See also*, *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir.2010). However, the chain of causation remains intact if "it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant." *Hand v. Gary*, 838 F.2d 1420, 1428 (5th Cir.1988). "[T]he chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary." *Id.* It is the Plaintiff's affirmative duty to both plead and establish with specificity that the magistrate's decision was tainted by false and misleading information beyond mere conclusory allegations. *Taylor*, 36 F.3d at 456-57.

Here, Plaintiff has attached and explicitly incorporated by reference both the probable cause affidavit and the magistrate's ruling. (D.E. 1 at 7, D.E. 1-2, 1-3, 1-4)  Nowhere in his complaint does Plaintiff allege that the information contained in affidavits is false.  In fact, Plaintiff's narrative of the events leading up to the arrest does not significantly differ from the narrative contained in the arrest affidavits.  Specifically, Plaintiff's narrative does not seem to dispute the fact that when Trooper Davis first ordered Plaintiff to submit to hand restraints he evaded his attempts to secure his arms. (See D.E. 1 at 6) ("Trooper Davis…tried to put the Plaintiff's hands behind his back.  Plaintiff reasserted his Constitutional right asking for their probably cause…")  Plaintiff's claim is premised on his legal conclusion that Defendants did not have sufficient probable cause[3] to approach the vehicle and request identification, and therefore no cause to arrest Plaintiff for failing to comply.[4]  Because Plaintiff has not alleged nor identified with any degree of particularly any false statements that tainted the magistrate's finding of probable cause, Plaintiff's false arrest / false imprisonment and conspiracy claims fail as a matter of law and should be dismissed.

---

[3] Throughout his complaint, Plaintiff claims the Defendants actions were wrongful because they approached and attempted to question the passengers of the vehicle without "probable cause."  It is well established that officers may briefly detain citizens for the purposes of investigating suspicious circumstances. *Terry v. State of Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).  An investigating officer need only have a reasonable articulable suspicion to conduct such a stop – a legal standard well below probable cause. *Id.*

[4] It must also be noted here that under Texas Law for resisting arrest, it is no defense to prosecution that the underlying arrest was unlawful. TEX. PENAL CODE § 38.03(b).  In short, citizens do not have a right to resist an arrest because they disagree with an officer's application of the law.  "The right to resist an arrest, even an illegal arrest, is prohibited by the provisions of V.T.C.A., Penal Code, Section 38.03." *Sanford v. State*, 550 S.W.2d 682, 683 (Tex.Cr.App. 1977).

### III.

### DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S STATE LAW CLAIMS FOR LACK OF SUBJECT-MATTER JURISDICTION

Defendants are entitled to immunity from Plaintiff's state law intentional tort claims, which are barred under *Franka v. Velasquez*, 332 S.W.3d 367 (Tex. 2011) and the Texas Tort Claims Act.  Section 101.106 of the Texas Civil Procedures & Remedies Code – a provision of the Texas Tort Claims Act – forecloses any state tort claim brought by Plaintiff against the Defendant Troopers in this case.  Section 101.106(f) provides that if a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment, and if it could have been brought against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  Tex. Civ. Prac. & Rem. Code § 101.106(f); *Franka*, 332 S.W.3d at 369-85.   Upon the employee's motion, the suit against the employee must be dismissed unless the plaintiff amends and substitutes the governmental unit in the place of the employees on or before the 30th day after the date the motion is filed.  *Id.*

In *Franka*, the Texas Supreme Court explained that the rule set out in § 101.106(f) applied regardless of whether sovereign immunity would ultimately bar the claim against the governmental unit.  The effect of the Court's holding was to "foreclose suit against a government employee in his individual capacity if he was acting within the scope of employment."  *Franka*, 332 S.W.3d at 381. Though this cuts off an avenue for recovery for plaintiffs, this result, the Court held, is exactly what the legislature intended. The Court noted that in waiving governmental immunity for the governmental unit, "the Legislature correspondingly sought to

discourage or prevent recovery against an employee." [5] *Id.* at 384. In so holding, the Court also noted that the Legislature's intent mirrored that of Congress when it passed the federal Westfall Act, which likewise foreclosed tort actions against federal employees in their individual capacities. *Id.* at 384-85. In short, under *Franka*, all tort claims, including intentional torts, based on conduct within the general scope of an employee's employment "could have been brought" against the governmental unit, and are therefore barred against individual employees. *Franka*, 332 S.W.3d at 385.

The doctrine announced in *Franka* has now been applied by courts to bar tort actions brought against state employed law enforcement officers. *See, e .g.*, *Herrera v. Aguilar*, SA:10–CV–00569–DAE, 2013 WL 4784125 (W.D.Tex., September 06, 2013); *Zepeda v. Sizemore*, SA:11–CV–901–DAE, 2013 WL 4677964, *7–9 (W .D. Tex. Aug. 30, 2013); *Tipps v. McCraw*, SA–12–CV–00766–DAE, 2013 WL 2250120, *3–7 (W.D.Tex. May 22, 2013); *Kelley v. Chambers Cnty., Texas*, 3:12–CV–00194, 2013 WL 1003455, *3–5 (S.D.Tex. Mar. 13, 2013).

The Court's opinion in *Bordges v. City of Flower Mound*, 2011 WL 5600339, *5-6 (E.D. Tex. 2011) is particularly applicable. In *Borges*, the Plaintiff claimed the defendant police officer had entered his garage without a warrant and refused to leave. *Id.* at 1. He claimed the officer demanded his identification and ordered him to submit to hand restraints despite the fact that he had already indicated to the Plaintiff that he did not intend to issue him a traffic citation. The plaintiff resisted but was subdued and then charged with resisting arrest. *Id.* The plaintiff asserted a number of state law tort claims along with this claims under Section 1983. *Id.* at 5-6. The Court held the state law claims to be barred under *Franka*. *Id.* Specifically the Court held

---

[5] Further bolstering this notion, in the time since *Franka*, the Texas Legislature has convened and passed no legislation to alter the result reached by the Court or the rule of law it affirmed.

that even if the officers acted tortiously, their tortious acts were in the course of interrogating and arresting Plaintiff, which would clearly fall within their duties as police officers meaning they were barred under *Franka*. *Id.* at *6.

Plaintiff's claims here are no different than those held to be barred in *Borges* or any of the several decisions applying *Franka* to law enforcement officers. The alleged tortious acts by Defendants took place while on duty and all involve actions that are well within the scope of a law enforcement officer's duties: investigating suspicious circumstances, detaining and arresting suspects, ascertaining their identities and transporting them to jail. Accordingly, Plaintiff's state law claims are barred and this Court lacks jurisdiction to hear them.

## IV.

## CONCLUSION

Defendant Troopers Davis, Salinas and Pahl request that this Court dismiss all claims against them under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Should the Court decline to grant this motion, Defendants Davis, Salinas and Pahl will tender their answers within ten days after notice of the Court's ruling, as provided by Rule 12(a).

Respectfully submitted,

**GREG ABBOTT**
Attorney General of Texas

**DANIEL T. HODGE**
First Assistant Attorney General

**DAVID C. MATTAX**
Deputy Attorney General for Defense Litigation

**KAREN D. MATLOCK**
Assistant Attorney General
Chief, Law Enforcement Defense Division

*/s/ Matthew J. Greer*
**MATTHEW J. GREER**
Assistant Attorney General
Texas Bar No. 24069825
Attorney-in-Charge

Law Enforcement Defense Division
Office of the Attorney General
Post Office Box 12548
Austin, Texas  78711-2548
(512) 463-2080 / fax (512) 495-9139

**ATTORNEYS FOR DEFENDANTS DAVIS, SALINAS, AND PAHL**

## NOTICE OF ELECTRONIC FILING

I, **MATTHEW J. GREER**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas, on September 16, 2013.

*/s/ Matthew J. Greer*
**MATTHEW J. GREER**
Assistant Attorney General

**CERTIFICATE OF SERVICE**

I, **MATTHEW J. GREER**, Assistant Attorney General of Texas, do hereby certify that a true copy of **Defendant Davis, Salinas, and Pahl's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim** has been served electronically via *Western District of Texas Electronic Document Filing System*, to all parties including Plaintiffs' Attorney, Jeffrey S. Kelly at **jkelly@kellylegalgroup.com** on September 16, 2013.

*/s/ Matthew J. Greer*
**MATTHEW J. GREER**
Assistant Attorney General