**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **REYNALDO MUNIZ, JR.,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **V.** | § | **A-13-CV-666-LY** |
| | § | |
| **CHANCY DAVIS, et al.,** | § | |
| **Defendants.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court are the following motions and their associated responses and replies:

(1)    City Defendants' Rule 12 Motion to Dismiss (Dkt. No. 35); Plaintiff's Response in
       Opposition (Dkt. No. 36); City Defendants' Reply (Dkt. No. 37);

(2)    Defendant Texas Department of Public Safety's Amended Motion to Dismiss for
       Lack of Subject Matter Jurisdiction (Dkt. No. 39); Plaintiff's Response in Opposition
       (Dkt. No. 43);

(3)    Defendants Davis, Salinas, Pahl, and Sorto's Motion to Dismiss for Failure to State
       a Claim (Dkt. No. 40); Plaintiff's Response in Opposition (Dkt. No. 44); Defendants
       Davis, Salinas, Pahl, and Sorto's Reply (Dkt. No. 48); Defendants Davis, Salinas,
       Pahl, and Sorto's Supplemental Brief Regarding Plaintiff's Claim for False Arrest
       (Dkt. No. 71); Plaintiff's Supplemental Brief in Response (Dkt. No. 72); and

(4)    Defendants Travis County and Sheriff Greg Hamilton's Motion to Dismiss Pursuant
       to Rule 12(b)(5) and 12(b)(6) (Dkt. No. 51); Plaintiff's Response in Opposition (Dkt.
       No. 53); Defendants Travis County and Sheriff Greg Hamilton's Reply (Dkt. No.
       54).

The District Court referred the above-motions to the undersigned Magistrate Judge for report

and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of

Appendix C of the Local Rules of the United States District Court for the Western District of Texas,

Local Rules for the Assignment of Duties to United States Magistrate Judges.  The Court held a hearing on the above-motions on July 9, 2014.

## I. BACKGROUND

This case arises from events which primarily occurred on May 26, 2012.  On that date, Plaintiff Reynaldo Muniz, Jr. ("Muniz"), alleges that his constitutional rights were violated by law enforcement officers employed by Defendants Texas Department of Public Safety Texas Highway Patrol Division ("DPS"), the Austin Police Department, and Travis County.  According to Muniz, he was a passenger in a Chevrolet truck that was parked in front of the Campus Auto Glass and N Tense Audio business located at 8505 Springdale Road in Austin, Texas.  Muniz states that he was an employee of the business and he and his co-worker, who was sitting in the driver's seat of the truck, were waiting for the owner to arrive.  While they were parked at the store, Defendants Chancy Davis and Alonso Salinas stopped a vehicle in front of the store for a traffic infraction.  While Salinas was questioning the stopped driver, Davis approached the truck and began questioning Muniz and his co-worker.  The Troopers' actions quickly became focused on Muniz and his co-worker, and the driver of the stopped car was let go with a warning.  The Troopers asked the two questions about what they were doing there, and asked them to identify themselves.  Muniz explained they worked at the store, and were waiting for their boss.[1]  Muniz quickly began to complain about providing ID, and what he viewed as the Troopers' probable cause-less inquiries and detention.  Muniz eventually exited the truck and attempted to walk into the store, but was ordered to remain at the truck.  Muniz alleges that Davis tried to put Muniz's hands behind his back,

---

[1]The owner of the store arrived during the stop and confirmed that both Muniz and the driver were employees of the store.

continuously poked him in the chest, and threatened him with a Taser.  As a result of Davis's actions, Muniz called 911.

Apparently one of the Troopers had called for supervisory assistance, and Defendants Cody Pahl and Richard Sorto arrived at the scene.  Thereafter, APD Officer Tim Little also arrived, in response to Muniz's 911 call.  Muniz asserts that Pahl, Sorto, and Little continued the unlawful restraint that was initiated by Davis and Salinas.  Little first spoke with the Troopers, and then spoke with Muniz at some length, and ultimately left the scene without taking action against anyone.  After some discussion, Muniz contends that Pahl advised Davis to arrest Muniz, noting that Muniz could always file a complaint later.  Muniz was thereafter arrested by the DPS Troopers and charged with failure to identify and resisting arrest.  He was taken to Travis County Jail by Davis and Salinas and booked there.  Muniz submits that he was held at the jail for over 31 hours and was not allowed to take pain medication for his back condition.  Upon his initial appearance, a magistrate set bond at $8,000.00.  On August 27, 2012, all charges against Muniz were dismissed.  *See* Dkt. No. 31.

Muniz filed this suit on August 7, 2013, alleging claims under 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.  All of the defendants have moved to dismiss Muniz's suit.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert a lack of subject-matter jurisdiction as a defense to suit.  Federal district courts are courts of limited jurisdiction, and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to

adjudicate the case." *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir. 2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).   A motion under Rule 12(b)(1) should be granted only if it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of its claim. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)).   In evaluating a challenge to subject-matter jurisdiction, the Court is free to weigh the evidence and resolve factual disputes so that it may be satisfied jurisdiction is proper. *See Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).   In conducting its inquiry, the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts. *Id.*   The Court must take the allegations in the complaint as true and draw all inferences in the plaintiff's favor. *Saraw P'ship v. United States*, 67 F.3d 567, 569 (5th Cir. 1995); *Garcia v. United States*, 776 F.2d 116, 117 (5th Cir. 1985).   Dismissal is warranted if the plaintiff's allegations, together with any undisputed facts, do not establish the Court has subject-matter jurisdiction. *See Saraw*, 67 F.3d at 569; *Hobbs v. Hawkins*, 968 F.2d 471, 475 (5th Cir. 1992).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).   In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008).   To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555.   "The court's task is to

4

determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

The standard for deciding a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is the same as the one for deciding a motion under Rule 12(b)(6). *Gentilello v. Rege*, 627 F.3d 540, 543–44 (5th Cir. 2010). "A motion brought pursuant to [Rule 12(c) ] is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (citation omitted). In deciding a motion to dismiss or judgment on the pleadings, the Court may consider documents that are essentially "part of the pleadings"—that is, any documents attached to or incorporated in the plaintiff's complaint that are central to the plaintiff's claim for relief. *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). Also, the Court is permitted to consider matters of public records and other matters subject to judicial notice without converting the motion into one for summary judgment. *See United States ex rel. Willard v. Humana Health Plan of Texas Inc.*, 336 F.3d 375, 379 (5th Cir. 2003).

### III.  ANALYSIS

As an initial matter, the Court notes that none of the parties appear to contend that the video evidence recorded during the incident, and submitted by Muniz, is not authentic or should not be considered by the Court as an accurate representation of the events which unfolded on May 26, 2012, and all appear to agree that the Court may consider the video in ruling on the motions.  *See* Dkt. No. 31, Exhibit F; Dkt. No. 36, Exhibit A.  The Fifth Circuit has recognized that on a motion to dismiss, video recordings may be given significant weight and courts may consider "the facts in the light depicted by the videotape." *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 381 (2007)); *see also Busch v. Viacom Int'l, Inc.*, 477 F.Supp.2d 764, 775–76 (N.D. Tex. 2007) (evaluating defendant's motion to dismiss in light of the video recording in a claim for defamation).  As such, in making recommendations on the Defendants' various motions to dismiss, the Court will consider the video evidence attached to Muniz's First Amended Complaint.

Muniz also asks the Court to consider the expert statement of Eddie Craig, attached as an exhibit to Muniz's First Amended Complaint.  *See* Dkt. No. 31, Exhibit G.  In the statement, Craig opines that the actions of the law enforcement officers in this case were unlawful.  Although Muniz claims that Craig is a former Sheriff's Deputy, there is no evidence before this Court of Craig's previous experience or qualifications.  Simply put, the Court has no basis to credit Craig's assertions that the defendants' actions were unlawful**.**  More to the point, however, even if the Court were to find Craig's statements credible, it would be inappropriate to consider his opinions at this stage.  In evaluating a motion to dismiss, "[t]he Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those

6

documents are referred to in the complaint and are central to the claims." *Cypress/Spanish Ft. I, LP v. Prof'l Serv. Indus., Inc.*, 814 F.Supp.2d 698, 706 (N.D. Tex. 2011). Here, Craig's statement is not attached to any of the defendants' motions to dismiss, and while it is attached to his complaint it is expert opinion that is only properly considered at the summary judgment stage.

As a final preliminary matter, the Court notes that the parties' briefs confuse more than clarify the issues. To the best of its ability, the Court has extracted the pertinent claims and arguments from the parties' submissions and from their arguments at the hearing. From what the Court can tell, Muniz brings the following claims:

1.  Against all Defendants (Chancy Davis, Alonso Salinas, Cody Pahl, Richard Sorto, Tim Little, Art Acevedo, DPS, Travis County, and Sheriff Hamilton):

    a.   Excessive force pursuant to § 1983;
    b.   False arrest pursuant to § 1983; and
    c.   Conspiracy to commit false arrest pursuant to § 1983.

2.  Against Travis County and Sheriff Hamilton:

    a.   A claim under Title II of the ADA and § 504 of the Rehabilitation Act; and
    b.   A claim under § 1983 for Eighth Amendment violations.

Operating under the assumption that these in fact are the claims Muniz is pursuing in this case, the Court will analyze the various arguments for dismissal.

**A.      City Defendants' Rule 12 Motion to Dismiss (Dkt. No. 35)**

In their motion, Defendants Tim Little and Art Acevedo ("Chief Acevedo") (collectively "City Defendants") contend that Muniz's claims against them should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. Dkt. No. 35 at 1. City Defendants also move for judgment on the pleadings pursuant to Rule 12(c). City Defendants claim that dismissal is warranted under Rule 12(b)(1) and 12(c) because Muniz (1) merely lists Little

and Chief Acevedo in the complaint, which does not confer jurisdiction; (2) did not plead sufficient facts to confer jurisdiction or state a claim for relief that is "facially plausible;" and (3) did not show that City Defendants have waived immunity in this suit.   City Defendants further assert that the defects of the Complaint are incurable by amendment.   To support their contentions, City Defendants assert that Muniz has not made any allegations that they either arrested or incarcerated him.   Dkt. No. 35 at 1.   More specifically, City Defendants highlight the fact that Muniz's First Amended Complaint makes no references to Chief Acevedo and only four references to Little, none of which present any factual allegations. *Id.* at 2.   Muniz's response, although lengthy, makes few discernible arguments against dismissal.   From what the Court can glean, Muniz appears to contend that the video evidence demonstrates that Little engaged in a conspiracy to unlawfully detain Muniz. Additionally, Muniz seems to assert that neither Little nor Chief Acevedo are shielded by immunity. *See* Dkt. No. 36.

The video evidence demonstrates that Muniz cannot state an excessive force, false arrest, or conspiracy claim against City Defendants.   With regard to the excessive force and false arrest claims, Muniz's allegations are completely baseless.   Muniz's First Amended Complaint does not even contend that Little or Chief Acevedo used *any* (much less excessive) force against Muniz or that either of them arrested him.   The video evidence conclusively shows that the very reason Little came to the scene was that Muniz had called 911 during his confrontation with Davis, and had requested that the dispatcher send an officer to the scene of what Muniz claimed to be a false arrest. So Little was only present at the arrest scene at Muniz's request.   Additionally, neither Muniz's First Amended Complaint nor the video evidence present any indication that Chief Acevedo had anything to do with Muniz's arrest or that Chief Acevedo was present at the scene at any point in time.

8

Simply put, Muniz has no basis to bring excessive force or false arrest claims against either Little or Chief Acevedo.

Similarly, Muniz's claim of conspiracy to commit false arrest against City Defendants is also lacking. Although Muniz accuses Little of joining the alleged conspiracy to arrest him, *see* Dkt. No. 36, ¶ 21, the video evidence belies Muniz's characterizations. Muniz points to two factors that purportedly support his claim against Little: (1) upon his arrival on the scene, Little talked to the other law enforcement officers before speaking with Muniz; and (2) Little expressed his opinion that Defendants Davis and Salinas were justified in approaching and questioning Muniz and his co-worker. *Id.* at ¶¶ 21–22. Neither of these events persuades the Court that Little violated Muniz's constitutional rights, or that he may be held liable for conspiracy to commit false arrest. The order in which Little spoke with people on the scene when he arrived does not demonstrate that Little participated in a conspiracy in any manner. Moreover, Little's opinion that Defendants Davis and Salinas may have been justified in their initial suspicion has no implication on Muniz's arrest. In fact, Muniz's First Amended Complaint explicitly asserts that Pahl, an employee of DPS, advised Davis to arrest Muniz. *See* Dkt. No. 31, ¶ 21. There is no indication that either Little or Chief Acevedo were involved in the decision the DPS Troopers made to arrest Muniz. *Id.* Accordingly, the Court finds that Muniz's claims against City Defendants should be dismissed in their entirety because Muniz cannot make a plausible claim that either Little or Chief Acevedo committed a constitutional violation against him.

To the extent Muniz asserts § 1983 claims that (1) policies implemented by Chief Acevedo resulted in constitutional violations against Muniz, or (2) Chief Acevedo's alleged failure to take corrective measures to train and instruct police officers led to violations, *see* Dkt. No. 31, ¶¶ 38–39,

the Court similarly rejects these contentions.  "Without a constitutional violation, [Muniz] does not

have a claim under § 1983."  *See Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 479 (5th Cir.

2003).  Based on the video evidence and Muniz's First Amended Complaint, the Court has already

determined that none of Little's actions amounted to a violation of Muniz's constitutional rights, and

that Chief Acevedo had nothing to do with the events Muniz complains of.  Accordingly, the claims

based on failure to train and allegedly deficient policies also fail as a matter of law.

**B.**     **Defendant Texas Department of Public Safety's Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction (Dkt. No. 39)**

DPS moves to dismiss Muniz's claims under Rule 12(b)(1), contending that the Eleventh

Amendment bars suit against the agency.  Because the state has not waived its immunity and

Congress has not overridden the state's immunity under the Fourteenth Amendment, DPS submits

that Muniz's suit against the agency should be dismissed.  *See* Dkt. No. 39.  In response, Muniz

seems to argue that his suit against DPS is not barred by the Eleventh Amendment pursuant to *Ex*

*Parte Young*, 209 U.S. 123 (1908).  Muniz claims that DPS "is not insulated from suit by virtue of

[its] standing as a state agency." Dkt. No. 43, ¶ 21.  After reviewing the parties' contentions and the

relevant law, the Court will recommend that the District Judge **GRANT** DPS's Motion to Dismiss

(Dkt. No. 39).

Fifth Circuit precedent is clear that "[t]he Eleventh Amendment . . . bars suits in federal court

by citizens of a state against their own state or a state agency or department." *Williams v. Dallas*

*Area Rapid Transit*, 242 F.3d 315, 318 (5th Cir. 2001) (quoting *Richardson v. S. Univ.*, 118 F.3d

450, 452 (5th Cir. 1997)).  "Federal courts are without jurisdiction over suits against a state, a state

agency, or a state official in his official capacity unless that state has waived its sovereign immunity

or Congress has clearly abrogated it." *Moore v. La. Bd. of Elementary and Secondary Educ.*, 743

F.3d 959, 963 (5th Cir. 2014).  The Eleventh Amendment may not be evaded by suing state agencies or state employees in their official capacity because such an indirect pleading remains in essence a claim upon the state treasury.  *Green v. State Bar of Texas*, 27 F.3d 1083,1087 (5th Cir.1994).  Here, it is clear that Muniz seeks to bring suit against DPS, a state agency.  DPS has not waived its immunity with regard to this suit and Muniz makes no allegation that DPS has done so.  Accordingly, Muniz's claim against DPS must be dismissed.

To the extent Muniz relies on *Ex Parte Young*, he is mistaken.  "To meet the *Ex Parte Young* exception, a plaintiff's suit alleging a violation of federal law must be brought against *individual persons in their official capacities* as agents of the state, and the *relief sought must be declaratory or injunctive in nature and prospective in effect*."  *Aguilar v. Tex. Dep't of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir. 1998) (emphasis added).[2]  Muniz does not fall within the exception. Muniz has not sued an individual in his official capacity nor is he seeking prospective declaratory or injunctive relief.  Muniz's  complaint clearly states that he is only seeking monetary damages for the alleged constitutional violations he suffered arising from the events on May 26, 2012.  Dkt. No. 31 at 16–17.  Muniz's claims against DPS are barred by Eleventh Amendment immunity and the Court will recommend that DPS's Motion to Dismiss (Dkt. No. 39) be granted.

**C.     DPS Troopers' Motion to Dismiss Pursuant to Rule 12(b)(6) (Dkt. No. 40)**

Defendants Davis, Salinas, Pahl, and Sorto (collectively "DPS Troopers")—all employees of DPS at the time relevant to this case—file a separate motion seeking to dismiss Muniz's First

---

[2] Even Muniz's response acknowledges the limited scope of this exception. *See* Dkt. No. 43, ¶ 19 ("Third, under the *Ex Parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when that suit seeks . . . prospective injunctive relief.") (internal quotations and citations omitted).

Amended Complaint for failure to state a claim.  In particular, the DPS Troopers assert that: (1) Muniz's excessive force claim must fail because it is predicated on being allegedly poked in the chest with no resulting injuries; and (2) Muniz's claims related to false arrest should be dismissed because a neutral magistrate found the existence of probable cause.  Dkt. No. 40.  To support his excessive force claim, Muniz contends that he suffered significant psychological injury as a result of the events on May 26, 2012.  *See* Dkt. No. 44, ¶¶ 26–27.  With regard to the false arrest and conspiracy claims, Muniz submits that the evidence presented before the neutral magistrate was false, misrepresented, and incomplete.  *Id.* ¶ 33.  In their reply, the DPS Troopers argue that to the extent the arrest affidavit contained any false or misrepresented statements, it had no impact on the magistrate's finding of probable cause because the incorrect statements do not negate the offense of resisting arrest under Texas law.  Dkt. No. 48 at 2.  According to the DPS Troopers, whether Davis stated the precise offense for which Muniz was being held or used the word "detained" as opposed to "arrested" is immaterial because the offense of resisting arrest "was completed when [Muniz] clearly pulled his arms away from Trooper Davis as he was trying to place him in hand restraints."  *Id.* at 3–5.  Finally, the DPS Troopers contend that Muniz's excessive force claim, if based upon the threat of using the Taser, fails because the Fifth Circuit has found that even actual usage of a Taser did not amount to an excessive use of force.  *Id.* at 5–8 (discussing *Poole v. City of Shreveport*, 691 F.3d 624, 625–26 (5th Cir. 2012)).[3]

-----

[3]The Court notes that it is unclear whether Muniz is asserting his claims against the DPS Troopers in their official or individual capacities.  To the extent Muniz is attempting to sue the DPS Troopers in their official capacity, those claims must be dismissed pursuant to the DPS Troopers' sovereign immunity under the Eleventh Amendment.  As already discussed above, a state official sued in his official capacity is protected by sovereign immunity unless the state has waived such immunity or Congress has abrogated it, or the plaintiff is seeking prospective injunctive relief. *Moore*, 743 F.3d at 963.  As noted in the text, Muniz does not seek prospective declaratory or

To state a claim for excessive force, Muniz must make factual allegations that, when taken as true, show "(1) an injury (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Ontiveros v. City of Rosenberg, Tex.*, 564 F.3d 379, 382 (5th Cir. 2009) (quoting *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007)). Here, Muniz's claim is based on contentions that Davis (1) repeatedly poked him in the chest with his finger and (2) threatened to use a Taser on him. Muniz contends that he suffered significant psychological injuries as a result of the aforementioned actions. Even if Muniz had sufficiently alleged an injury resulting from Davis's actions, the Court finds that Muniz has failed to present enough facts demonstrating that Davis's actions were "clearly excessive" or "clearly unreasonable." Although the video evidence may not provide exact clarity on the details of the interaction between Muniz and Davis, it is clear that their exchange became heated and antagonistic. Yet the only physical contact alleged by Muniz is that Davis poked him repeatedly with his finger. Furthermore, Muniz does not contend that Davis actually used the Taser. Rather, it was merely shown to Muniz as a result of what had become a heated conversation between Muniz and Davis, and because Muniz did not "give up" his hands to be cuffed. Given the exchange, Davis's actions simply cannot be construed as "clearly excessive" or "clearly unreasonable." If anything, going from a command to a threat to use a Taser, was a normal progression to *avoid* the use of force. As such, the Court will recommend that Muniz's excessive force claims be dismissed.[4]

---

injunctive relief, but instead is seeking monetary damages. Dkt. No. 31 at 16–17. Accordingly, to the extent Muniz is suing the DPS Troopers in their official capacities his claims fail.

[4] Additionally, Muniz's excessive force claim against Salinas, Pahl, and Sorto should be dismissed because Muniz has failed to allege any facts that would suggest they committed any of the actions upon which Muniz bases his excessive force claim. Indeed, Muniz's First Amended Complaint specifically states that it was Davis who touched Muniz with his finger and allegedly

To establish a claim for false arrest, Muniz must plead facts showing "that he was arrested without probable cause in violation of the Fourth Amendment." *Parm v. Shumate*, 513 F.3d 135, 142 (5th Cir. 2007).  The DPS Troopers contend that they had probable cause to arrest Muniz because he had failed to identify himself to the officers and had resisted arrest.  Unsurprisingly, Muniz disagrees with the DPS Troopers' interpretation of the law and the facts, arguing that the language of the statutes clearly demonstrate that the DPS Troopers had no probable cause to approach or arrest him.  At this stage in the litigation, the Court declines to dismiss Muniz's false arrest claim.  Although both parties view the video evidence as conclusively supporting their arguments, the Court does not.  For example, much of the interaction between Muniz and Davis occurred on the passenger side of the truck, which is at least partially blocked in the video. Additionally, the conversation between Muniz and Davis is not entirely clear from the audio on the recording.  Moreover, the video recording does not even capture the DPS Troopers' initial approach to the truck.  At that time, the camera was focused on the traffic stop.  Based on the current record, the Court simply cannot conclude that, as a matter law, the DPS Troopers either did or did not have probable cause to arrest Muniz.  Accordingly, the Court finds that Muniz's false arrest claim survives dismissal at this time.

For a conspiracy claim under § 1983, Muniz must allege facts that demonstrate (1) an agreement to commit an illegal act and (2) an actual deprivation of constitutional rights.  *See Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1995).  A conspiracy claim is not actionable without a violation of § 1983.  *Connors v. Graves*, 538 F.3d 373, 377–78 (5th Cir. 2008) (citing *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995)).  Mere conclusory allegations of a conspiracy are

---

threatened Muniz with the Taser.  Dkt. No. 31, ¶ 20.

insufficient to support a claim under § 1983.  *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir. 1986).  Here, Muniz has stated more than just conclusory allegations with regard to his conspiracy claim.  In particular, Muniz contends that Pahl specifically advised Davis to arrest Muniz and suggested that Muniz could file a complaint afterwards if there was no basis for the arrest.  *See* Dkt. No. 31, ¶ 21.  Furthermore, although the precise details of the DPS Troopers' conversations are unclear, the video evidence demonstrates that the DPS Troopers engaged in detailed discussions and conferred prior to the decision to arrest Muniz.  Given the current record, the Court finds that Muniz's conspiracy to commit false arrest claim should not be dismissed at this time, particularly when the Court has not yet determined whether a false arrest occurred in this case.

The parties also dispute whether the finding of probable cause by the magistrate precludes the DPS Troopers' liability for Muniz's false arrest or conspiracy claims.  As the DPS Troopers recognize,

> if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party.  However, the chain of causation remains intact if it can be shown that the deliberations of that intermediary were in some way tainted by the actions of the defendant.  The chain of causation is broken only where all the facts are presented to the grand jury, or other independent intermediary where the malicious motive of the law enforcement officials does not lead them to withhold any relevant information from the independent intermediary.

*Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010) (internal quotations and citations omitted).  Here, Muniz contends that the facts submitted to the magistrate were false, misrepresented, or incomplete.  *See* Dkt. No. 44, ¶ 33.  At this stage in the litigation and based on the current record, the Court cannot determine that "all the facts" were presented to the magistrate, as it is not even clear at this point what "all the facts" are.  The magistrate's finding of probable cause was based on the DPS Troopers' recitation of events, which is disputed by Muniz, and as

already discussed, notwithstanding the existence of the dashboard video, it is unclear at this point what the relevant facts are.

Although the Court will not recommend dismissal of Muniz's false arrest or conspiracy to commit false arrest claims in their entirety, the Court does conclude that these claims should be dismissed to the extent they are asserted against Sorto.  To state a § 1983 claim against a public employee in their individual capacity, "[a] plaintiff must establish that the defendant was either personally involved in the deprivation or that his wrongful actions were causally connected to the deprivation." *James v. Tex. Collin Cnty.*, 535 F.3d 365, 373 (5th Cir. 2008).  Muniz must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555. When a complaint contains nothing more than conclusory allegations, the court may dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6).  *See, e.g.*, *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992).  In this case, the Court finds that Muniz's First Amended Complaint only states conclusory allegations against Sorto.  Nothing in the complaint alleges that Sorto took any specific action to deprive Muniz of his constitutional rights.  Instead, Muniz merely contends that Sorto "arrived on the scene and continued the unlawful restraint of the Plaintiff" and that he engaged in a conspiracy.  Dkt. No. 31, ¶¶ 21, 26.  The video shows that Sorto was there accompanying Pahl, who was his superior, and who was the person to whom David and Salinas looked for guidance.  Muniz makes no allegation that Sorto made any statements or performed any action encouraging Muniz's arrest.  Given the lack of any specific allegations against Sorto, the Court concludes that Muniz has failed to state enough facts pertaining to Sorto that would state a plausible claim to relief.  As such, the Court will recommend that the District Judge dismiss Muniz's false arrest and conspiracy to commit false arrest claims against Sorto.

16

**D.     Defendants Travis County and Sheriff Greg Hamilton's Motion to Dismiss Pursuant to Rules 12(b)(5) and 12(b)(6) (Dkt. No. 51)**

As stated previously, Muniz brings the following claims against Defendants Travis County and Sheriff Greg Hamilton ("Hamilton") (collectively "County Defendants"): (1) a violation of Title II of the ADA and § 504 of the Rehabilitation Act and (2) a violation of the Eighth Amendment pursuant to § 1983.[5]   County Defendants contend that Muniz's claims against them should be dismissed because (1) Muniz failed to execute service within the time frame set forth in Rule 4(m); (2) Muniz's claims against Hamilton, in both his official and individual capacity, fail; (3) Muniz does not sufficiently allege violations of Title II of the ADA or § 504 of the Rehabilitation Act; and (4) Muniz's allegations of inadequate medical care fail to state a claim under § 1983.  Dkt. No. 51. Muniz argues that his claims against the County Defendants should be not dismissed because: (1) Rule 12(b)(5) is inapplicable as Muniz's counsel acted in good faith and County Defendants were fully aware of the lawsuit; (2) the ADA and Rehabilitation Act clearly apply to County Defendants; and (3) Muniz has stated a valid claim for failure to provide adequate medical care against County Defendants.  Dkt. No. 53.  Muniz bases his claims against the County Defendants on the same set of facts:  while in the Travis County Jail, Muniz was denied access to medical care

---

[5] To the extent Muniz asserts claims of excessive force, false arrest, and conspiracy to commit false arrest against County Defendants, the Court finds those claims wholly without merit and will recommend dismissal of those claims.  Muniz's First Amended Complaint does allege that County Defendants had defective policies that provided improper and inadequate training for their officers with regard to "investigating a complaint, questioning a civilian, and effecting an arrest." Dkt. No. 31, ¶ 38.  However, the complaint only states that some unnamed deputy "appeared at the scene and joined the conspiracy of a deliberate indifference to the constitutional rights of the Plaintiff."  *Id.* ¶ 21.  The video evidence conclusively demonstrates that no employee or subordinate of the County was involved in Muniz's arrest.  Additionally, Muniz does not even allege that any employee of Travis County used force against him, arrested him, or made the decision to arrest him. Dkt. No. 31.  Muniz also does not name any Travis County deputy as a defendant in this case.

17

when the County Defendants failed to provide him with his medication, and tried to coerce him into signing a "paper" in exchange for his medication. Dkt. No. 31, ¶¶ 45–55.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. "The language of Title II generally tracks the language of Section 504 of the Rehabilitation Act" and "[j]urisprudence interpreting either section is applicable to both." *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000). Consequently, to survive dismissal at this stage, Muniz must allege that "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disabilities." *Fox v. Miss.*, 551 Fed.Appx. 772, 774 (5th Cir. 2014) (per curiam); *see also Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 428 (5th Cir. 1997). To satisfy the first element, Muniz must present sufficient factual allegations that allow this Court to infer that he was a qualified individual with a disability on May 26, 2012, when the alleged violations occurred. *Hale v. King*, 642 F.3d 492, 500 (5th Cir. 2011) (per curiam). Here, the Court concludes that Muniz has failed to do so. As such, Muniz has failed to meet the basic requirement for asserting a claim under the ADA or § 504 of the Rehabilitation Act and his claims pursuant to these statutes should be dismissed.

Under the ADA, a "disability" means "(a) a physical or mental impairment that substantially limits one or more major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment . . . ." 42 U.S.C. § 12102. Although the Court does not question that Muniz's back issues may cause him some limitations, Muniz has not made

sufficient allegations to suggest that those limitations are substantial.  For example, the video evidence clearly shows that Muniz has no issues performing many functions of daily life.  Indeed, Muniz demonstrated no problems with movement and purportedly was able to complete tasks related to his job working on vehicles.  Even if the Court assumed Muniz is disabled under the ADA, his claim still fails because he does not allege he was denied medications because of his disability.  To the extent Muniz complains that the County Defendants insisted that he sign a "paper" before being provided his medications, he fails to tie this to his alleged disability as well.  The complaint contains no allegation that other detainees were treated differently in this regard, and did not also have to sign a release to receive medications.  For the foregoing reasons, the Court will recommend that Muniz's ADA and Rehabilitation Act claims against County Defendants be dismissed.

Muniz's § 1983 claim based upon the Eighth Amendment should also be dismissed.  First, Muniz brings the claim under the wrong constitutional amendment.

> Pretrial detainees and convicted prisoners . . . look to different constitutional provisions for their respective rights to basic needs such as medical care and safety. The constitutional rights of a *convicted state prisoner* spring from the Eighth Amendment's prohibition on cruel and unusual punishment . . . .  The constitutional rights of a *pretrial detainee*, on the other hand, flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment.

*Hare v. City of Corinth, Miss.*, 74 F.3d 633, 639 (5th Cir. 1996) (emphasis added).[6]  Here, it is obvious that Muniz is not a convicted prisoner; his charges were ultimately dismissed.  Yet Muniz's complaint unambiguously states that he wishes to seek relief based on the Eighth Amendment.  Dkt.

---

[6] If Muniz were claiming a use of excessive force while in the jail, he would have an Eighth Amendment claim.  *See Kitchen v. Dallas Cnty., Tex.*, — F.3d —, 2014 WL 3537022 at *4 (5th Cir. July 17, 2014).  However, this is clearly not the case here.

No. 31 at 15.  Based on Fifth Circuit precedent, Muniz simply cannot do so.  For this reason alone, Muniz's claim should be dismissed.[7]

Even construing Muniz's complaint under the Fourteenth Amendment, Muniz still fails to assert a viable claim under § 1983.

> [T]o establish a constitutional violation of [his right to adequate medical care], a detainee must show that the defendant acted with deliberate indifference to his serious medical needs, meaning that the defendant was subjectively aware of a substantial risk of serious harm and failed to take reasonable measures to abate that risk.
>
> * * *
>
> In other words, a detainee must show that the defendant "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs."

*Lucy v. Shaw*, 357 Fed.Appx. 607, 609 (5th Cir. 2009) (citing *Hare*, 74 F.3d at 647–48; quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).  "Deliberate indifference is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal citations and quotations omitted); *see also Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2001) ("We begin by emphasizing that our court has interpreted the test of deliberate indifference as a significantly high burden for plaintiffs to overcome.").  Here, Muniz's complaint fails to establish the County Defendants were deliberately indifferent to his medical needs.  Muniz's First Amended Complaint does not describe any specific instance when County Defendants deliberately refused to provide Muniz his medications.

---

[7] Because Muniz is represented by counsel, the Court has no obligation to construe his complaint liberally and in his favor.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).  In fact, Muniz's counsel continues to contend in the response that the Eighth Amendment is applicable to Muniz's claim.  Dkt. No. 53.

Furthermore, while Muniz has attached medical materials documenting his back problems, *see, e.g.*, Dkt. No. 31, Exhibit J, there is no indication or allegation that the County Defendants were informed about his condition. Moreover, assuming Muniz's asserted facts are true, County Defendants actually provided Muniz opportunities to obtain his medications; it was Muniz who refused to sign the "paper" (apparently a release of some kind) required to receive medications at the Travis County Jail. *Id.* ¶ 52. Simply put, Muniz has not alleged sufficient facts to show that County Defendants were deliberately indifferent to his medical needs.

Additionally, the § 1983 claim against Hamilton should be dismissed because "supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). For a supervisor to be liable requires either "(1) his personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id.* at 304; *see also Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008). Muniz's First Amended Complaint satisfies neither requirement. Aside from conclusory statements, Muniz does not allege that Hamilton was personally involved in denying Muniz his medications. With regard to the second exception, the Court can identify no contention by Muniz that Hamilton's actions caused Muniz to be refused his medicines. In fact, Muniz does not allege Hamilton took *any* actions that harmed Muniz. For this reason as well, Muniz's § 1983 claim against Hamilton should be dismissed.[8] For these reasons, the Court should **GRANT** the County Defendants' Motion to Dismiss (Dkt. No. 51).

---

[8]Given that Muniz's claims against County Defendants fail to state a claim, the Court need not reach the County Defendants' argument under Rule 12(b)(5) regarding service.

## IV.  RECOMMENDATION

In summary, the Court **RECOMMENDS** that the District Judge **GRANT** City Defendants' Motion to Dismiss (Dkt. No. 35); Defendant Texas Department of Public Safety's Amended Motion to Dismiss (Dkt. No. 39); and Defendants Travis County and Sheriff Greg Hamilton's Motion to Dismiss (Dkt. No. 51) in accordance with the discussion above.

The Court **FURTHER RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** Defendants Davis, Salinas, Pahl, and Sorto's Motion to Dismiss for Failure to State a Claim (Dkt. No. 40).

Should the District Judge accept the undersigned's recommendations, Muniz's remaining claims in this case will be (1) a false arrest claim against Defendants Davis, Salinas, and Pahl and (2) a conspiracy to commit false arrest claim against Defendants Davis, Salinas, and Pahl.  All remaining claims and parties would be dismissed.

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 27th day of August, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE