IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| REYNALDO MUNIZ, JR., § | | |
|    Plaintiff, § | | |
| § | | |
| v. § | | Civil Action No. 1:13-cv-666-LY |
| § | | |
| TEXAS DEPARTMENT OF PUBLIC § | | |
| SAFETY et al., § | | |
|    Defendants. § | | |

**<u>DEFENDANT DAVIS, SALINAS, AND PAHL'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS</u>**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE, LEE YEAKEL**:

Defendants Chancy Davis, Alonso Salinas, and Cody Pahl, by and through the Office of the Attorney General of the State of Texas, file the following objections to the Magistrate Judge's Report and Recommendation denying, in part, their Motion to Dismiss. (See D.E. 73) In support of these objections, Defendants offer the following:

**I.     STATEMENT OF THE CASE**

Plaintiff Reynaldo Muniz, Jr. filed this action against Defendants Davis, Salinas, and Pahl stemming from a detention and arrest on May 26, 2012. Troopers Davis, Salinas, and Pahl are (or were at the time relevant to this case) law enforcement officers employed by the Texas Department of Public Safety. (DPS) In his complaint, Plaintiff alleges that on or about May 26, 2012, all of the Defendants violated his civil rights when he was detained and later arrested for failure to identify and resisting arrest.

Plaintiff claims that on the morning of May 26, 2012, a Saturday, he was sitting in a truck parked backwards outside of closed auto shop on Springdale Road. (D.E. 31 at 6) The tailgate was facing the front of the business. (*Id.*) Troopers Davis and Salinas conducted a traffic stop of

another vehicle directly adjacent to the area where Plaintiff was parked. (*Id.*) Trooper Davis observed that the Plaintiff and the driver of the truck were sitting slouched in their seats in such a way that made it difficult to see them. (D.E. 31 at Ex. D, I) Finding these circumstances suspicious, Trooper Davis approached the vehicle to identify the individuals and determine what they were doing there.[1] Defendants contend that Trooper Davis was acting on sufficient reasonable suspicion in doing so.

What followed was an argument between Trooper Davis and Plaintiff Muniz, who was the passenger in the vehicle, regarding whether they were or were not required to show their identification.[2] Trooper Davis ordered Plaintiff Muniz to stay in the vehicle. (D.E. 31 at Ex. F) Plaintiff Muniz disobeyed this instruction and exited the vehicle and attempted to walk away from the scene. (*Id.* at 7:15) Trooper Davis intercepted him behind the vehicle and the argument between them continued. (*Id.*) Trooper Davis then ordered Muniz to turn around, telling him that we he was being detained. (*Id.* at 8:10)

Crucially, Plaintiff admits that at this point Trooper Davis was attempting to grasp his arms to restrain him. Specifically, Plaintiff states: "Plaintiff exited the vehicle and as he walked away from the scene was illegally detained by Defendant Trooper Davis *who tried to put the Plaintiff's hands behind his back.*" (See D.E. 31 at 6, ¶20 (emphasis added)). Also, Plaintiff's own expert (whose report was incorporated into the complaint) acknowledges that Trooper Davis was attempting to restrain Plaintiff Muniz: "Trooper Davis continues for several more seconds to

---

[1] Trooper Davis' suspicions would later prove to be entirely founded as the driver of the vehicle was found to have outstanding warrants for his arrest. (D.E. 31, Ex. I at 5)

[2] As noted at the hearing on this motion, Trooper Davis concedes that he was incorrect regarding whether Muniz was required to show his identification, and concedes that Muniz had not, at this point, committed the offense of failure to identify as he was only detained, and not under arrest. As shown below, this fact is not dispositive on any issue.

commit simple assault and false imprisonment of Muniz *by attempting to physically restrain him with metal handcuffs.*" (See D.E. 31-7, Exhibit G at 5 (emphasis added)). Nowhere in the complaint does Plaintiff state that Trooper Davis was successful in securing him at this time or that he complied with Trooper Davis' orders. (*Id.*)

Plaintiff also submitted and incorporated in his complaint, a copy of the dash camera video documenting this incident. (D.E. 31, Ex. F) The video confirms that which Plaintiff has artfully stated in his pleadings: that Trooper Davis ordered Plaintiff to submit to hand restrains, attempted to secure his arms, and that Plaintiff, in protest, twice pulled his arms away from Trooper Davis' grasp. (See D.E. 31, Ex. F at 8:15 - 8:35) In his report, Trooper Salinas states that when Trooper Davis attempted to secure Plaintiff's arms, he pulled his hands away and swung his body around. (D.E. 31 at Ex. I) Plaintiff's and Defendants' accounts of these events are not inconsistent with each other.

After Plaintiff had pulled away from Trooper Davis, he drew, but did not deploy, his taser as he awaited the arrival of other officers. Following the arrival of the APD and TCSO officers, he was arrested by Defendants and transported to the Travis County Jail.

Plaintiff admits that following his arrest, an affidavit and application for an arrest warrant was presented before a neutral magistrate. (D.E. 31 at 7, 1-2, 1-3, 1-4) The magistrate found probable cause to arrest Plaintiff on the resisting arrest charge and set bail at $8,000 on the resisting arrest charge. (*Id.*) The warrant affidavit presented to the magistrate does not differ in any material respect from the version of events described by Plaintiff, nor does it differ in any material respect from what can be seen in the video.

## II.     OBJECTIONS AND ARGUMENT

The Magistrate Judge erred in his determination that at this stage in the litigation, the facts are sufficiently unclear that dismissal is not warranted. (D.E. 73 at 14-15)  Defendants contend that while some aspects of the interaction between Plaintiff Muniz and the Defendant Troopers might be less than entirely clear, the key facts which affirmatively negate Plaintiff's ability to sustain a false arrest claim against Defendants *are* clear through the video of the incident, Plaintiff's own admissions, and evidence incorporated in his complaint.

**A.     All the facts necessary to negate Plaintiff's claims are present within the four corners of his complaint.**

The Report and Recommendation correctly cites to *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir.2010) for the proposition that if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party. (D.E. 73 at 15)  The Magistrate Judge erred, however, by holding that based on the current record, the Court was unable to determine if "all the facts" were presented to the magistrate as necessary to break the chain of causation. (*Id.* at 14-15)  Defendants contend that, whatever ambiguity in the facts might exist at this point in the litigation, all of the facts necessary to support a charge for resisting arrest are clearly present in the record and were present in the arrest warrant presented to the neutral magistrate.

This case is somewhat unique because, even though this case is still early in the pleadings stage, Plaintiff attached and specifically incorporated into his complaint a great deal of evidence. (See D.E. 31) This means that the Court is still reading from within the four corners of Plaintiff's complaint when determining these issues.

**B.     The undisputed facts were sufficient to support a charge of resisting arrest.**

The complete statutory elements of the offense of resisting arrest are that a person: (1) "intentionally prevents or obstructs"; (2) "a person he knows is a peace officer or a person acting in a peace officer's presence and at his direction" (3) "from effecting an arrest, search, or transportation of the actor or another" (4) "by using force against the peace officer or another." TEX. PENAL CODE § 38.03(a). The phrase "effecting an arrest" is to be interpreted broadly to encompass the entire process of bringing a person under police control, even if the alleged resistance occurred at a time when the suspect was merely being detained. *Schrader v. State*, 753 S.W.2d 733, 735 (Tex.App.—Austin, 1988).

Both Federal and Texas Courts have held that when a suspect pulls his arms away from an officer who is attempting grasp them, he has committed the offence of resisting arrest. "The great weight of Texas authority indicates that pulling out of an officer's grasp is sufficient to constitute resisting arrest." *Ramirez v. Martinez*, 716 F.3d 369, 376 (5th Cir.2013) (citing *Pumphrey v. State*, 245 S.W.3d 85, 89 (Tex.App.—Texarkana 2008, pet. ref'd) (footnote omitted) ("[W]e hold that the statute authorizes a conviction for resisting arrest when the defendant actively pulls against an officer's established grasp of the defendant during an arrest attempt."); *Torres v. State*, 103 S.W.3d 623, 627 (Tex.App.—San Antonio 2003, no pet.) ("[A] person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under section 38.03."); *Bryant v. State*, 923 S.W.2d 199, 207 (Tex.App.—Waco 1996, pet. ref'd) (emphasis removed) ("[P]ulling one's arm in an attempt to shake off an officer's detaining grip could amount to force against that officer [under section 38.03]."); *Hopper v. State*, 86 S.W.3d 676, 679 (Tex.App.—El Paso 2002, no pet.) (holding "a

person who uses force in order to shake off an officer's detaining grip, whether by pushing or pulling, may be guilty of resisting arrest under Section 38.03")).

This subject has been at the forefront in both the Texas Court of Criminal Appeals and the Third Court of Appeals. In *Dobbs v. State*, 434 S.W.3d 166, 172-73 (Tex.Crim.App. 2014) the Court of Criminal Appeal recently affirmed the *Pumphrey* Court's holding that pulling away from an officer's efforts gain control constitutes "force against the peace officer" within the meaning of the law.[3]  Also, the Third Court of Appeals very recently upheld a resisting arrest conviction where the defendant pulled away from the arresting officers who were attempting to restrain him. *See Finley v. State,* --- S.W.3d ----, 2014 WL 4358485 (Tex.App.—Austin August 28, 2014.)

As can been seen and heard on the video, Defendant Davis instructs Plaintiff to turn and place his hands behind his back. (DE. 31, Ex. F at 8:15-18)  He refused to do so. (*Id.* at 8:15-34) He then twice attempts to grasp Plaintiff's arms.  On the first attempt, Trooper Davis' actions cannot be seen, but Plaintiff's reaction can be seen as he abruptly pulled arms away and over his head in circular motion. (*Id.* at 8:19-21)  From there, Trooper Davis' second attempt to secure Plaintiff's arms is visible on the video. (*Id.* at 8:24-28)  Trooper Davis reaches with right arm to grasp Plaintiff's left arm which is still placed above his head while giving the command for Plaintiff to turn around. (*Id.* at 8:24-28)  The video clearly shows Plaintiff pulling his left arm away from Trooper Davis' second attempt to grasp it. (*Id.* at 8:24-28)

During the hearing on this motion, the Magistrate Judge expressed concern that it is unclear from the video what exactly Trooper Davis was doing when Plaintiff initially pulled his arms into the air.  Any ambiguity on this point is resolved by the Plaintiff's own admissions.

---

[3] The Court noted this while holding that a suspect threatening to use a gun on *himself* rather than on the arresting officers did *not* fit this statutory definition. *Id.* at 173.

Specifically, Plaintiff states: "Plaintiff exited the vehicle and as he walked away from the scene was illegally detained by Defendant Trooper Davis who tried to put the Plaintiff's hands behind his back." (See D.E. 31 at 6, ¶20 (emphasis added)). Also, Plaintiff's own expert (whose report was incorporated into the complaint) acknowledges that Trooper Davis was attempting to restrain Plaintiff Muniz: "Trooper Davis continues for several more seconds to commit simple assault and false imprisonment of Muniz by attempting to physically restrain him with metal handcuffs." (See D.E. 31-7, Exhibit G at 5). Further, even if the first instance Plaintiff pulled away is not clear from the video, the second can be clearly seen in the video. (*Id.* at 8:24-28)

When these facts are compared to the Defendants description contained in the arrest affidavit, it is clear that the magistrate was presented with all the relevant facts necessary to find probable cause. The Magistrate's holding that he cannot determine if "all of the facts" were presented to the neutral magistrate in the case is therefore in error. While there are some details of the precise mechanics of the actions of Plaintiff and Trooper Davis, the facts which are clear are sufficient to support the charge. *See Franks v. Delaware*, 438 U.S. 154 (1978) (holding that when dealing with a claim of false or missing information in an arrest affidavit, the Court should subtract the alleged deficiencies and determine whether the what's left still supports probable cause).

Further, the Magistrate failed to take into account the fact that it is the Plaintiff's burden to establish exactly what information was withheld and how this tainted the finding of probable cause. *Taylor v. Gregg*, 36 F.3d 453, 456-57 (5th Cir.1994)  As shown in the briefing before the Court, the particular ways in which Plaintiff contends that the arrest affidavit was deficient have no bearing on the offense of resisting arrest. (See D.E. 44 at 7-8, D.E. 48 at 2-5)  Even if it is unclear to the Court *if* "all of the facts" were present or what "all of the facts are," it is the

Plaintiff's burden to plead or otherwise establish *what* facts are missing and *how* those missing facts tainted the magistrate's finding of probable cause. Plaintiff has not done so, which is fatal to his claim.

**C.     It is no defense to prosecution for resisting arrest that Plaintiff had not committed the offense of failure to identify.**

Plaintiff has repeatedly argued that because he had not committed the underlying offense for which he was being arrested, his resisting arrest charge must also then be invalid. (D.E. 24 at 4 "If the Plaintiff should not have been arrested for failure to identify then he should not have been charged with resisting arrest.") In this, Plaintiff is simply incorrect. Under Texas Law for resisting arrest, it is no defense to prosecution that the underlying arrest was unlawful. TEX. PENAL CODE § 38.03(b). In short, citizens do not have a right to resist an arrest because they disagree with an officer's application of the law. "The right to resist an arrest, even an illegal arrest, is prohibited by the provisions of V.T.C.A., Penal Code, Section 38.03." *Sanford v. State*, 550 S.W.2d 682, 683 (Tex.Crim.App. 1977). If the actor forcibly resists an unlawful arrest, that fact may have other consequences (such as the exclusion of evidence) but it does not determine anything of relevance under § 38.03(a). *Schrader v. State*, 753 S.W.2d 733, 735 (Tex.App.— Austin, 1988). Therefore, even though Plaintiff is correct that the failure to identify charge was unsupported, this does not insulate him from his resisting arrest charge.[4]

**D.     Because Plaintiff's false arrest claim fails as a matter of law, Plaintiff's conspiracy claims fails as well.**

Defendants further object to the Magistrate's retention of the Plaintiff's conspiracy claim. Because Plaintiff's underlying false arrest claim fails, the conspiracy cannot survive as a

---

[4] This also disposes of any claim for false arrest based on the arrest for failure to identify. As the Fifth Circuit held in *Wells v. Bonner* (and several times thereafter), "[i]f there was probable cause for any of the charges made, then the arrest was supported by probable cause, and the claim for false arrest fails." 45 F.3d 90, 95 (5th Cir.1995).

standalone cause of action. *Pfannstiel v. City of Marion*, 918 F.2d 1178 (5th Cir.1990).  It should also be dismissed.

### III.   CONCLUSION

Defendants Davis, Salinas, and Pahl ask this Court to sustain their objections to the Magistrate Judge's Report and Recommendation and dismiss the claims against them with prejudice.

    Respectfully submitted,

    **GREG ABBOTT**
    Attorney General of Texas

    **DANIEL T. HODGE**
    First Assistant Attorney General

    **DAVID C. MATTAX**
    Deputy Attorney General for Defense Litigation

    **KAREN D. MATLOCK**
    Assistant Attorney General
    Chief, Law Enforcement Defense Division

    */s/ Matthew J. Greer*
    **MATTHEW J. GREER**
    Assistant Attorney General
    Texas Bar No. 24069825
    Attorney-in-Charge

    Law Enforcement Defense Division
    Office of the Attorney General
    Post Office Box 12548
    Austin, Texas  78711-2548
    (512) 463-2080 / fax (512) 495-9139

    **ATTORNEYS FOR DEFENDANTS DAVIS, SALINAS, AND PAHL**

## NOTICE OF ELECTRONIC FILING

I, **MATTHEW J. GREER**, Assistant Attorney General of Texas, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas, on September 10, 2014.

>*/s/ Matthew J. Greer*
>**MATTHEW J. GREER**
>Assistant Attorney General

## CERTIFICATE OF SERVICE

I, **MATTHEW J. GREER**, Assistant Attorney General of Texas, do hereby certify that a true copy of **Defendant Davis, Salinas, and Pahl's Objections to the Magistrate Judge's Report and Recommendation Regarding Defendants' Motion to Dismiss** has been served electronically via *Western District of Texas Electronic Document Filing System*, to all parties including Plaintiff's Attorney, on September 10, 2014.

>*/s/ Matthew J. Greer*
>**MATTHEW J. GREER**
>Assistant Attorney General